# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| ROSS E. PATTERSON, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No. SA-09-CV-1-XR |
| § | |
| CELADON TRUCKING SERVICES, INC., § | |
| d/b/a/ CELADON GROUP, INC., § | |
| § | |
| *Defendant*. § | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

On this date, the Court considered Defendant's Motion for Summary Judgment and Brief in Support Thereof (Docket Entry No. 15). Having considered the motion, Plaintiff's response, Defendant's reply, the relevant authority, and available evidence, Defendant's motion for summary judgment is hereby GRANTED. Defendant's motion to strike (Docket Entry No. 18) is GRANTED IN PART; thereby, resulting in the Court striking the second sentence of paragraph 17 of Plaintiff's affidavit. Plaintiff's motion for a continuance is DISMISSED AS MOOT.

### Background

Defendant Celadon Trucking Services, Inc., d/b/a Celadon Group, Inc., ("Celadon") hired Plaintiff Ross E. Patterson ("Patterson") as a truck driver on or about November 1, 2007. Celadon is a truckload carrier headquartered in Indianapolis, Indiana, with a staff of approximately 2,400 truck drivers and a fleet of over 3,300 tractors and 10,000 trailers.

As a road trucking company, Celadon is required to abide by regulations of the United States Department of Transportation ("DOT") that require medical certification of drivers who will be driving semi-trailer trucks. An individual is required to have a current Department of Transportation

medical certification before operating a semi-trailer truck. To meet DOT standards, Celadon contracts with Community Hospital System in Indianapolis, Indiana, to provide occupational health care professionals who conduct medical examinations and evaluations. Melodie Gill, a licensed Nurse Practitioner in the state of Indiana, is employed in the Occupational Health Department of Community Hospital and conducts her medical examinations at Celadon as part of her employer's agreement with the company. She collaborates with physicians at Community Health, including Dr. Thomas Spolyar, to evaluate drivers and determine whether they meet the requirements for medical certification. Celadon requires a medical examination as a precondition to being hired by Celadon, periodically as specified by the medical providers, and when information is obtained that calls into question whether a driver remains medically certifiable.

Patterson is a 54 year old male who suffers from sleep apnea, a disorder that causes a person to stop breathing for brief periods of time while asleep. Due to Patterson's sleep apnea, he is required to sleep with a Bi-level Positive Airway Pressure machine ("BIPAP"), which contains a mask that goes over the patient's nostrils and blows air to keep a patient's airway open while asleep. When Patterson applied for employment with Celadon, he traveled to Indianapolis so that he could receive the required medical examination on October 31, 2007. During this medical examination, Patterson completed the employee portion of the DOT medical certification paperwork, informing Celadon that he suffers from high blood pressure, diabetes, and sleep apnea and takes certain medications. Patterson provided Celadon with a company questionnaire completed by his treating physician in San Antonio, Texas, Dr. Lisa D. Garza, specifically related to his sleep apnea. In her professional opinion, Patterson's sleep disorder was satisfactorily controlled, and it did not adversely affect his ability to operate a commercial vehicle. Patterson received a three-month DOT medical

certification.

Patterson returned to Indiana for another medical examination on February 1, 2008, upon the expiration of his three-month medical certification. He received a one-year medical certification. Patterson contends that he was told he would need an annual medical check-up related to his sleep apnea. Around May 2008, Patterson contends that Celadon threatened to terminate his employment because he was idling his truck while he slept.[1] Patterson would idle the truck while he slept because he used his BIPAP machine while sleeping in the truck and the truck battery powered the BIPAP. If he did not idle the truck his BIPAP would drain the battery, resulting in the vehicle not starting the following morning.

On May 1, 2008, Patterson visited a pulmonologist in San Antonio, who prescribed oxygen for Patterson to be administered twenty-four hours per day. To receive the oxygen, Patterson would have a small oxygen tank or concentrator connected to a thin hose that would go over his ears and into his nostrils. He claims that his inability to use the BIPAP machine resulted in low oxygen levels in his blood, requiring the twenty-four hour oxygen.

On or about May 6, 2008, Celadon's Occupational Health Department learned of the prescription for twenty-four hour oxygen. Celadon's Safety Department placed a "medical hold" on Patterson, which prevented him from operating a Celadon commercial vehicle pending further investigation. Celadon requested that he have a pulmonary function test.

On May 8, 2008, Patterson underwent a pulmonary function test in San Antonio. The results, which showed that he had a compromised lung function, were forwarded to Celadon and received

---

[1] Celadon established a standard by which it would measure the time that trucks would idle and require drivers to idle their trucks in accordance with that standard.

by Gill on May 12, 2008. Gill consulted Dr. Spolyer via telephone and the decision was made that Patterson was not medically certifiable based primarily on Patterson's reliance on twenty-four hour oxygen coupled with his unacceptable pulmonary function test. Patterson sent a Celadon form letter via fax to Celadon signed by his pulmonologist in San Antonio in which the physician declared that Patterson's condition was stable and that he was medically qualified to return to work driving a commercial vehicle. On or about May 13, 2008, Celadon terminated Patterson's employment.

## Procedural History

Patterson filed a formal charge with the EEOC and filed suit on December 8, 2009, in the 224th District Court of Bexar County, Texas, asserting claims for disability discrimination and "perceived or regarded as" disability discrimination in violation of Texas statutes. (Pl.'s Original Pet., Dec. 8, 2008 [Docket Entry No. 1 attach.].) Celadon timely removed the case to this Court on January 5, 2009, on the basis of diversity of citizenship between the parties and Plaintiff's damages exceeding $75,000. (Notice of Removal, Jan. 5, 2010 [Docket Entry No. 1].) Celadon filed a motion for summary judgment (Def.'s Mot. for Summ. J., Dec. 2, 2009 [Docket Entry No. 15]) to which Patterson responded (Pl.'s Resp. to Def.'s Mot. for Summ. J., Dec. 23, 2009 [Docket Entry No. 17]). Celadon submitted a reply (Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J., Jan. 6, 2010 [Docket Entry No. 19]) and moved to strike portions of Plaintiff's summary judgment evidence (Def.'s Objections & Mot. to Strike, Jan. 6, 2010 [Docket Entry No. 18].) Patterson has not responded to the motion to strike, and the time to do so has expired. *See* FED. R. CIV. P. 6 (regarding calculation of deadlines); L.R. CV-7(d) (W.D. Tex.) (regarding deadlines to respond to motions). Patterson has moved to continue the trial date. (Mot. to Continue Trial, Feb. 2, 2010 [Docket Entry No. 20].)

## Legal Standard

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248; *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). A fact is 'material' if its resolution in favor of one party might affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002).

The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party meets its initial burden, the nonmoving party "must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). The Court reviews all facts in the light most favorable to the non moving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009). However, "a summary assertion made in an affidavit is simply not enough proof to raise a genuine issue of material fact." *Id.* (citing *Hibernia Nat'l Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993).

## Analysis

Patterson asserts claims for disability discrimination and "perceived or regarded as" disability discrimination in violation of the Texas Commission on Human Rights Act (TCHRA). *See* TEX. LABOR CODE §§ 21.051–.061 (Vernon 2006). The TCHRA parallels the language of the Americans

5

with Disabilities Act (ADA), 42 U.S.C. § 12112, and the Fifth Circuit and Texas courts have held that a claim under the TCHRA is analogous to a claim under the ADA and generally would be treated similarly. *Rodriguez v. ConAgra Grocery Products Co.*, 436 F.3d 468, 474–75 (5th Cir. 2006); *Honeywell, Inc.*, 361 F.2d 272, 285–86 & n.13 (5th Cir. 2004); *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) ("The Legislature intended to correlate state law with federal law in employment discrimination cases when it enacted the TCHRA.").

A plaintiff may present a case for discrimination by direct or circumstantial evidence, or both. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002). Here, Patterson can offer only circumstantial evidence to prove disability discrimination, which requires application of the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009). Under this framework, the plaintiff must first make a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802; *McInnis v. Alamo Comm. College Dist.*, 207 F.3d 276, 279 (5th Cir. 2000). To establish a prima facie case, the plaintiff must show that: (1) he is disabled, has a record of having a disability, or is regarded as disabled,[2] (b) he is qualified for his job, (c) he was subjected to an adverse employment action on account of his disability or the perception of his disability, and (d) he was replaced by or treated less favorably than non-disabled employees. *Chevron Phillips Chem. Co.*, 570 F.3d at 615 (citing *McGinnis*, 207 F.3d at 279).

---

[2]A plaintiff is "regarded as" disabled if he:
(1) has an impairment which is not substantially limiting but which the employer perceives as . . . substantially limiting . . . ; (2) has an impairment which is substantially limiting only because of the attitudes of others towards such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment.
*Rodriguez v. ConAgra Grocery Products Co.*, 436 F.3d 468, 475 (5th Cir. 2006) (quoting *Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir. 1996)).

> If the employer can articulate a legitimate non-discriminatory reason for the adverse employment action, the *McDonnell Douglas* burden-shifting framework falls away and the issue becomes discrimination *vel non*. In considering the ultimate issue of discrimination, the trier of fact can consider both the evidence presented in the prima facie case and any evidence the plaintiff produces that tends to show that the employer's articulated reason for the adverse employment action was pretextual.

*Id.* (internal citations omitted) (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), and applying it to a case arising under the ADA).

Patterson contends that he was not provided a reasonable accommodation, *i.e.*, "he was fired because of performance, but that performance was caused by a disability that could have been accommodated." *Grubb v. Sw. Airlines*, 296 Fed. Appx. 383, 386 (5th Cir. 2008). "As a threshold requirement in an ADA claim, the plaintiff must, of course, establish that he has a disability." *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003) (quoting *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996)). A "disability" is (1) a mental of physical impairment that substantially limits one or more major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. *See* 42 U.S.C. § 12102(2); TEX. LAB. CODE § 21.002(6); *Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 111 (5th Cir. 2005).

Assuming *arguendo* that Patterson suffers from a disability, he must prove that he is qualified for the position in question to establish a prima facie case of discrimination under the ADA. *Martin v. Lennox Int'l, Inc.*, 342 Fed. Appx. 15, 17 (5th Cir. 2009); *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001). A qualified individual with a disability is one who "with or without reasonable accommodation, can perform the *essential functions* of the employment position that such individual holds or desires." *E.E.O.C. v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 730 (5th

Cir. 2007) (internal quotation marks omitted) (quoting *Rodriguez*, 436 F.3d at 474).

DOT requires a commercial motor vehicle driver to be medically certified as physically qualified to operate the vehicle. 49 C.F.R. § 391.41 (2009); *see also Barreto v. Cont'l Express, Inc.*, No. H-05-290, 2006 WL 1715344, at *5 (S.D. Tex. June 20, 2006) ("DOT regulations require commercial truck drivers to pass a DOT physical and to hold a valid DOT Medical Examiner's Certificate."). Here, Celadon's occupational health professionals determined that the results of Patterson's pulmonary function test, coupled with his use of twenty-four hour per day oxygen, rendered him medically ineligible to drive under DOT medical regulations. As a result of Patterson's medical ineligibility, Celadon terminated his employment.

Patterson's only response to Defendant's argument on this issue is: "Plaintiff is qualified to continue to work for Defendant because he could easily perform his duties if he was allowed to use his BIPAP mask and oxygen concentrator while he slept." (Resp. at 7.)

Attached to Patterson's response to the motion for summary judgment is a form that he faxed to Celadon from his pulmonologist in which the pulmonologist declares that Patterson is "medically qualified (with regard to the condition [he] am/was treating) to return to work driving a commercial vehicle." (Resp. ex. D; Mot. ex. 2 attach.) This form, however, fails to create a material issue of fact. The pulmonologist's form specifically declares that Patterson is qualified to drive "*with regard to the condition [he] was treating.*" *Id.* (emphasis added). Dr. Spolyer, one of Celadon's occupational health specialists, testified: "[b]ecause of the 24/7 oxygen *and* not being able to pass a pulmonary function test that in my opinion he would not be certifiable." (Mot. ex. 4 at 12:12–14; Resp. ex. I at 12:12–14.) (emphasis added). Celadon's health specialists' testimony state additional concerns beyond the results of the pulmonary function test administered by Patterson's

8

pulmonologist. Nurse Practitioner Gill testified: "Well, the obvious and greatest concern would be if there was a malfunction on the device providing oxygen . . . meaning that his oxygen level could drop too low, he could become confused in a subtle way that he might not realize." (Mot. ex. 3 at 18:9–14; Resp. ex. J at 18:9–14). She continued: "They could become short of breath, have trouble breathing. . . . [T]hey could begin to have chest pain or heart problems. . . . [and] could become incapacitated driving a semi without enough notice in order to stop the vehicle safely." (Mot. ex. 3 at 19:4–8; Resp. ex. J. at 19:4–8). The testimony shows that the occupational health specialists considered multiple factors in their determination that Patterson did not meet the medical requirements to drive his vehicle while the pulmonologist's declaration only pertains to his particular treatment. Consequently, Patterson was not qualified to work as a commercial truck driver because he lacked the required medical certification at the time he was terminated. Accordingly, Patterson has failed to establish a prima facie case that his termination violated the TCHRA for discrimination based on a disability or discrimination based on Celadon regarding Patterson as disabled.

**Defendant's Motion to Strike and Plaintiff's Motion for Continuance**

Celadon moved to strike portions of Patterson's summary judgment evidence. Patterson did not respond to the motion and the time to do so has expired. Affidavits cannot preclude summary judgment unless they contain admissible evidence. FED. R. CIV. P. 56(e); *Love v. Nat'l Med. Enterps.*, 230 F.3d 765, 775 (5th Cir. 2000). Rules 801(c) and 802 of the Federal Rules of Evidence preclude the admission of hearsay. *See* FED. R. EVID. 801(c), 802. In the second sentence of paragraph 17 of Patterson's affidavit, Patterson presents a statement from his doctor for the truth of the matter asserted. The Court must therefore strike this particular statement as it is inadmissible hearsay. The remaining statements that Celadon seeks to strike were irrelevant to the Court's

decision. Consequently, Defendant's motion is to strike is GRANTED IN PART with the remainder being DISMISSED AS MOOT. There being no further issues to adjudicate in this matter, Plaintiff's motion to continue the trial is DISMISSED AS MOOT.

## Conclusion

Plaintiff is unable to prove a prima facie case for discrimination. Accordingly, the Court GRANTS Defendant's motion for summary judgment. Defendant's motion to strike is GRANTED IN PART with the remainder being DISMISSED AS MOOT. There being no issues of fact requiring disposition at a trial, Plaintiff's motion for a continuance is DISMISSED AS MOOT. The clerk is instructed to close this case.

It is so ORDERED.

SIGNED this 4th day of February, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE